# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Karl W. Ash,** | Case No. 5:21CV00526 |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| | Magistrate Judge Jennifer Dowdell Armstrong |
| **Kilolo Kijakazi,** | |
| **Acting Commissioner of Social Security** | |
| | **MEMORANDUM OPINION AND ORDER** |
| **Defendants.** | |

This matter is before the Court on the Objections of Plaintiff Karl W. Ash ("Plaintiff" or "Ash") to the Report and Recommendation of Magistrate Judge Jennifer Dowdell Armstrong regarding Plaintiff's request for judicial review of the Defendant Commissioner of the Social Security Administration's ("Defendant" or "Commissioner") denial of his application for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (Doc. No. 20.) For the following reasons, Plaintiff's Objections are OVERRULED, the Report & Recommendation ("R&R") is ACCEPTED, and the Commissioner's decision is AFFIRMED.

**I.  Background**

In April 2019, Ash filed his application for POD and DIB, alleging a disability onset date of January 20, 2018. (Doc. No. 11 (Transcript ["Tr."]) at 160.)  The application was denied initially and upon reconsideration, and Ash requested a hearing before an administrative law judge ("ALJ"). (Tr. 15.)  On July 23, 2020, the ALJ conducted a telephonic hearing at which Ash was represented by counsel and testified.  (Tr. 42-73.)  A vocational expert ("VE") also testified.  (*Id.*)

On August 10, 2020, the ALJ found that Ash was not disabled. (Tr. 15-41.) The ALJ found that Ash suffered from the severe impairments of "intradural benign tumor of the lumbar spine at L2 with lumbar denervation and radiculopathy, status post (s/p) L2 laminectomy and resection of mass, and multilevel degenerative disc disease (DDD) of the lumbar spine; and multilevel DDD of the lower thoracic spine." (Tr. 19.) However, the ALJ determined that Ash did not meet or medically equal the requirements of a listed impairment and that he retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work. (Tr. 20-34.) The ALJ concluded that Ash could perform his past relevant work as an Archivist and, therefore, was not disabled. (Tr. 34-37.) The Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1- 6.)

Ash seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. No. 1.) The case was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(1) for a Report and Recommendation. The R&R concludes that the ALJ's decision is supported by substantial evidence and recommends that the decision be affirmed. (Doc. No. 20.) On January 11, 2023, Ash filed the following Objections to the R&R:

    I.       The R&R's Finding that Substantial Evidence Supports the ALJ's Finding at Step Three of the Sequential Evaluation was Factually Incorrect.

    II.      The R&R's Finding that Substantial Evidence Supports the ALJ's Finding that Plaintiff Did Not Require the Use of a Cane at Step Four of the Sequential Evaluation was Factually and Legally Incorrect.

(Doc. No. 21.) The Commissioner filed a response to Ash's Objections on January 25, 2023. (Doc. No. 22.) The Court has conducted a *de novo* review of the issues raised in Plaintiff's Objections.[1]

---

[1] Ash raised numerous arguments in his initial Brief on the Merits before the Magistrate Judge, but only objected to the R&R's findings as to the two specific issues noted *supra*. As to those issues addressed in the R&R to which Ash did not

2

**II.     Relevant Medical Evidence[2]**

In March 2018, Ash presented to the emergency room with low back pain. (Tr. 325.) Examination revealed pain with movement, positive straight leg raise, and muscle spasm, though Ash still possessed full strength and sensation. (Tr. 326-327.) X-rays were taken of Ash's lumbar spine, which showed marked disc space narrowing at the L5-S1 level and moderate narrowing at the L4-L5 level but no acute bony abnormality. (Tr. 246, 327.) Ash was diagnosed with acute chronic lower back pain and acute lumbar paraspinal musculature spasm. (Tr. 330.) He was prescribed pain medication and advised to follow up with his primary care physician. (Tr. 327, 333.)

On June 4, 2018, Ash presented to primary care physician Raymond Mason, M.D., with complaints of severe low back pain radiating to both legs. (Tr. 466.) Ash reported that he was "barely able to ambulate due to pain" and that pain medication had been "no help." (*Id*.) Examination revealed joint tenderness, decreased range of motion, "limping and shuffling gait," and weakness. (Tr. 469.) Pertinent here, Dr. Mason diagnosed back pain with radiculopathy. (*Id*.) He ordered an MRI and referred Ash for an orthopedic evaluation and to physical therapy. (*Id*.)

On June 14, 2018, Ash presented to orthopedist Daniel Dorfman, M.D. (Tr. 244.) On examination, Dr. Dorfman noted diffuse tenderness over Ash's mid and lower lumbar musculature bilaterally, restricted flexion, absent reflexes on the right knee and ankle, and intact hip, knee, and

---

object, the Court has reviewed the R&R's findings for clear error and found none. *See* Fed. R. Civ. P. 72, Advisory Committee Notes (providing that "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") Accordingly, the Court adopts the R&R with respect to all issues addressed therein to which Ash did not raise a specific objection.

[2] The Magistrate Judge's thorough recitation of the hearing testimony, medical evidence, and opinion evidence is incorporated herein and need not be repeated in full. The Court restates only that evidence necessary to a resolution of Plaintiff's Objections.

3

ankle motion. (Tr. 246.) He also noted that Ash ambulated with a cane. (*Id.*) Dr. Dorfman diagnosed radiculopathy in the lumbar region, other intervertebral disc degeneration in both the lumbar and thoracic regions, fusion of the spine in the thoracic region, and spondylosis without myelopathy or radiculopathy in the thoracic region. (*Id.*)

Ash underwent an MRI of his lumbar spine on July 25, 2018. (Tr. 249-250, 259-260.) This imaging revealed an intradural extramedullary mass at L2 with mild to moderate, multilevel degenerative disc disease and spondylotic change with foraminal stenosis, most notably at the L4-5 and L5-S1 levels and contact with descending S1 nerve root. (*Id.*) Shortly thereafter, on August 2, 2018, Ash underwent an EMG, which revealed L4-5 radiculopathy and chronic abnormality in L2 distribution.[3] (Tr. 250, 257, 324.)

On August 6, 2018, Ash returned to Dr. Dorfman with complaints of continued lower back pain radiating to his legs, spasm and numbness in his lower extremities, difficulty walking, and difficulty with prolonged sitting, bending, twisting, and stooping. (Tr. 248-249.) He rated his pain a 6 on a scale of 10. (Tr. 248.) Dr. Dorfman noted that Ash was "ambulating with a slow but symmetrical gait pattern," but did not indicate that Ash was using a cane. (Tr. 249.) Examination revealed tenderness, limited motion "in all plains," and absent reflexes on the right. (*Id.*) Hamstring shortening was noted on seated straight leg raising but "nerve root tensions signs" were absent. (*Id.*) Dr. Dorfman referred Ash for an MRI with contrast to better assess the mass noted in the July 2018 MRI. (Tr. 250.) Ash underwent this MRI on August 20, 2018. (Tr. 262.) It confirmed an intradural mass at L2 and degenerative changes similar to the prior study. (*Id.*)

---

[3] The record also reflects that Ash attended multiple physical therapy sessions between June 6 and July 16, 2018. (Tr. 416-442.) Overall, Ash showed some improvement during these sessions. (*Id.*) However, the session notes indicate that he continued to report pain and, on several occasions, ambulated with a cane. *See e.g.*, Tr. 422, 419, 416.

On October 11, 2018, Ash underwent surgery for an L2 laminectomy with resection of intradural mass. (Tr. 271-273, 559-561.) Paul W. Hartzfeld, M.D., performed the surgery. (Tr. 559.) Dr. Hartzfeld's post-operative notes indicate that he removed a tumor growing off one of Ash's nerve roots. (Tr. 272.) These notes reflect a postoperative diagnosis of L2-L3 intradural tumor. (Tr. 272, 559.) Ash was discharged in satisfactory condition two days later. (Tr. 284.)

Ash thereafter went to a series of postoperative physical therapy visits between November 2018 and April 2019. Treatment notes from these visits reflect the following:

- At his November 9, 2018 physical therapy evaluation, Ash reported a pain level of 9/10. He ambulated with a straight cane and wore a back brace. He was given precautions of no bending, lifting, or driving. (Tr. 409-410).

- During November and December 2018, Ash variously reported pain levels between 5/10 and 7/10. (Tr. 406, 403, 400, 397, 394, 391, 388, 385.) He was consistently observed as using a cane and back brace. (*Id*.) At several visits, Ash reported some improvement, including the ability to walk around the block and mop the floor. (Tr. 397, 394.)

- On January 7, 2019, a Physical Therapy Re-Assessment Note indicated improvement in Ash's range of motion, strength, and mobility. (Tr. 381-83.) Ash displayed full 5/5 muscle strength throughout his lower extremities, except for reduced (4+/5) graded strength in his left knee and left hip flexors. (*Id*.) He demonstrated moderately limited range of motion at the lumbar spine and reported pain levels of 5/10 to 6/10. (*Id*.) Ash reported feeling like he "totters and wobbles" and stated that he uses the cane for "safety." (Tr. 382.)

- On January 28, 2019, Ash's postoperative restrictions were lifted, and he was permitted to lift and do bending movements as per his pain tolerance. He also was permitted to drive and wean himself from his back brace. (Tr. 374.) On that date, Ash reported a pain level of 5/10 and stated that he felt "much more flexible." (*Id*.)

- During his February 2019 sessions, Ash variously reported pain levels of 4/10 and 5/10. (Tr. 371-373, 368, 365-367, 362-363.) His physical therapists noted a "good response" after each session, with improved fluidity of movement and improved endurance. (*Id*.) On February 18 and 25, 2019, Ash ambulated with a standard cane at the beginning of the session but ambulated without an assistive device throughout the therapy session. (Tr. 365, 362-363.) His therapist noted "improved gait pattern and improved posture." (*Id*.)

- On March 11, 2019, a Physical Therapy Re-Assessment Note indicated that Ash had shown improvement but had not met his goals for full improvement. (Tr. 356.) He

5

      showed full 5/5 strength throughout all muscle groups of the bilateral lower extremities, ambulated without the assistance of a cane during his therapy session, and reported a 5/10 pain level. (Tr. 355-58). Regarding ambulation, Ash reported feeling "ok with walking," and stated that he ambulated without an assistive device in his house but with a standard cane in the community. (Tr. 356.)

- On March 18 and 25, 2019, Ash reported pain levels of 5/10 and 4/10, respectively. (Tr. 352, 349.) He continued to ambulate with an assistive device at the beginning of sessions, but not during the sessions themselves. (*Id*.)

- On April 1, 2019, Ash reported that he "went on a walk this weekend and went shooting and was able to tolerate." (Tr. 346.) He reported a pain level of 4/10 and progressed to include more strenuous exercises during his session. (Tr. 346-347.)

At his last physical therapy session on April 8, 2019, Ash reported that "he went on a walk yesterday, which went well." (Tr. 343.) He stated that he "brings his cane, but does not use it," although he reported difficulty ambulating up and down hills. (*Id*.) Later in the session, the physical therapist noted that Ash "report[ed] ambulating community distances, uses cane at times, and carries cane at other times." (Tr. 344.) Ash stated that his increased pain continued and that he "feels weak." (*Id*.)

On October 9, 2019, Ash presented to Certified Nurse Practitioner Sonja Guilda, C.N.P. (Tr. 506-507.) Nurse Guilda noted that Ash "will need a new MRI of lumbar spine with and without contrast for tumor recurrence/surveillance." (*Id*.) Examination revealed decreased range of motion of Ash's lumbar spine, and lower extremity motor strength of 4/5 on the left and 5/5 on the right. (*Id*.) Ash underwent the lumbar MRI with and without contrast on October 23, 2019. (Tr. 605-606.) This imaging revealed the following:

> 1. Postsurgical changes identified, related to L2 laminotomy and underlying spinal canal mass resection. No drainable fluid collection or abscess within the surgical bed. A tiny punctate focus of enhancement is noted within the intrathecal spinal canal at this level, likely postsurgical in nature, however tiny residual tumor cannot be completely excluded.

6

    2. Unchanged degenerative findings of the spinal canal when compared to 8/20/2018.

(Tr. 606.)

    On November 1, 2019, Ash returned to Dr. Hartzfeld for a one-year follow-up post- lumbar surgery. (Tr. 503-504.) Ash complained of "significant" low back pain and "lots of burning" in his lower back and leg. (*Id*.) He also complained of difficulty sitting and standing and stated that he was "utilizing a cane because he feels weak in his leg." (*Id*.) On examination, Dr. Hartzfeld noted decreased range of motion in Ash's lumbar spine and lower extremity strength of 4/5 on the left and 5/5 on the right. (*Id*.) Dr. Hartzfelt also remarked that Ash "ambulates with cane." (Tr. 504.) Dr. Hartzfeld reviewed Ash's October 2019 MRI and found as follows:

> This MRI with and without contrast shows expected postop changes. There is no evidence of tumor recurrence. There [are] degenerative changes throughout without significant central canal stenosis. There is a small degree of expected arachnoiditis given his history.

(*Id*.)

    On June 8, 2020, Ash returned to Dr. Mason with complaints of "constant daily pain." (Tr. 614.) He reported that Lyrica "was not working as well as it used to" but that he did not want to go to pain management. (*Id*.) On examination, Dr. Mason noted joint tenderness, decreased range of motion, limping, and weakness. (Tr. 616.) Dr. Mason treated Ash's back pain with a steroid taper and increased his Lyrica dosage. (Tr. 617.)

    On June 12, 2020, Dr. Mason completed a Physical Medical Source Statement regarding Ash's physical functional limitations. (Tr. 510-513.) Dr. Mason indicated diagnoses of back pain with radiculopathy, lipoma of back, and restless leg syndrome. (*Id*.) He stated that Ash's symptoms included pain and weakness and opined that Ash's prognosis was poor. (*Id*.) Dr. Mason further stated that Ash experienced blurred vision and poor balance as side effects of taking Lyrica. (*Id*.)

Dr. Mason opined that Ash could rarely lift less than 10 pounds and never lift 10 pounds or more. (*Id*.) He further opined that Ash could (1) sit for a total of less than 2 hours in an 8-hour workday, (2) stand/walk for a total of less than 2 hours in an 8-hour workday, and (3) sit and stand for no more than one minute at one time, each, before needing to change position. (*Id*.) Dr. Mason stated that Ash must use a cane or other assistive device "all of the time" for both walking and standing, due to imbalance, insecurity, pain, and weakness. (Tr. 512.) Dr. Mason opined that Ash would be off task 25% or more of the workday. (*Id*.) He concluded that Ash was "incapable of working." (Tr. 511, 513.)

### III. Standard of Review

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). *See Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926 at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted); *Orr v. Kelly*, 2015 WL 5316216 at *2 (N.D. Ohio Sept. 11, 2015) (citing *Powell,* 1994 WL 532926 at *1). *See also* Fed. R. Civ. P. 72(b)(3). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1).

Under the Social Security Act, a disability renders the claimant unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can result in death or that can last at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The impairment must prevent the claimant from doing the claimant's previous work, as well as any

other work which exists in significant numbers in the region where the individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). Consideration of disability claims follows a five-step review process.[4] 20 C.F.R. § 404.1520.

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)).

If substantial evidence supports the Commissioner's finding that the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted). A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *Bass v.*

---

[4] Under this five step review, the claimant must first demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d). Before considering step four, the ALJ must determine the claimant's residual functional capacity, i.e., the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbot*, 905 F.2d at 923.

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). Moreover, the Commissioner's decision must be affirmed even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

IV.  **Analysis**

    A.    **Step Three - Listing 1.04**

Ash first argues that the Magistrate Judge erred when she concluded that substantial evidence supports the ALJ's decision at Step Three that Ash did not satisfy the criteria of Listing 1.04. (Doc. No. 21 at pp. 2-3.) Specifically, Ash maintains that both the Magistrate Judge and the ALJ erred when they determined that Dr. Hartzfeld's November 2019 finding of a "small degree of expected arachnoiditis" was insufficient to satisfy Listing 1.04B. (*Id.*) Ash argues that Dr. Hartzfeld "made a diagnosis of spinal arachnoiditis based on appropriate medical imaging [i.e., the October 2019 MRI]" and, thus, "Plaintiff identified sufficient evidence to demonstrate that he satisfied the criteria of Listing 1.04." (*Id.*) The Commissioner disagrees, asserting that the ALJ properly considered all the medical evidence (including the October 2019 MRI and Dr. Hartzfeld's November 2019 treatment note) to conclude that the requirements of Listing 1.04(B) were not met. (Doc. No. 22.)

At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 Fed. Appx. 488, 491 (6th Cir. 2010). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§

404.1525(a), 416.925(a). Essentially, a claimant who meets the requirements of a Listed Impairment, as well as the durational requirement, will be deemed conclusively disabled and entitled to benefits.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). It is the claimant's burden to bring forth evidence to establish that his impairments meet or are medically equivalent to a listed impairment. *See e.g., Lett v. Colvin*, 2015 WL 853425 at * 15 (N.D. Ohio Feb. 26, 2015). A claimant must satisfy all of the criteria to "meet" the listing. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). *See also Foster v. Halter*, 279 F.3d 348, 354-355 (6th Cir. 2001); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 432 (6th Cir. 2014). A claimant is also disabled if his impairment is the medical equivalent of a listing, 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

Where the record raises a "substantial question" as to whether a claimant could qualify as disabled under a listing, an ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment. *See Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414-15 (6th Cir. 2011); *Brauninger v. Comm'r of Soc. Sec.*, 2019 WL 2246791 at * 5 (6th Cir. Feb. 25, 2019). In order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for his decision. *Id*. at 416-17.

Here, Ash's Objection is limited to the ALJ's finding that he failed to satisfy the requirements of Listing 1.04B regarding spinal arachnoiditis. Thus, the Court limits its discussion to Listing 1.04B,

as it existed at the time of Ash's application and the ALJ decision.[5] Listing 1.04B sets forth the criteria for spinal arachnoiditis, as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> \*\*\*
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04B. Thus, to satisfy Listing 1.04(B), a claimant must demonstrate (1) compromise of a nerve root or spinal cord; (2) spinal arachnoiditis confirmed by operative note, tissue biopsy, or acceptable imaging; and (3) a manifestation of severe burning or painful dysesthesia resulting in the need for changes in position or posture more than once every 2 hours. *See Chopka v. Saul,* 2019 WL 4039124 at \* 4 (N.D. Ohio Aug. 27, 2019); *Martin v. Comm'r*, 2018 WL 6169282 at \* 10 (N.D. Ohio Nov. 26, 2018). The Introductory Paragraphs to Listing 1.04 further explain, in relevant part, as follows:

> Spinal arachnoiditis is a condition characterized by adhesive thickening of the arachnoid which may cause intermittent ill-defined burning pain and sensory dysesthesia, and may cause neurogenic bladder or bowel incontinence when the cauda equina is involved. \*\*\* Although the cause of spinal arachnoiditis is not always clear, it may be associated with chronic compression or irritation of nerve roots (including the cauda equina) or the spinal cord. For example, there may be evidence of spinal stenosis, or a history of spinal trauma or meningitis. **Diagnosis must be confirmed at**

---

[5] The Social Security Administration revised the Listing criteria for disorders of the spine in 2021. *Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020). This Court, however, applies the version of Listing 1.04B that was in effect at the time of Ash's DIB application and the ALJ's decision. *See Zoran C. v. Comm'r of Soc. Sec.,* 2023 WL 181092 at fn 3 (W.D. Ky. Jan. 13, 2023) (applying version of Listing 1.04 in effect at the time of the claimant's application and the ALJ's decision). *See also Bowman v. Comm'r of Soc. Sec.*, 683 Fed. Appx. 367, fn 2 (6th Cir. 2017).

> **the time of surgery by gross description, microscopic examination of biopsied tissue, or by findings on appropriate medically acceptable imaging**. Arachnoiditis is sometimes used as a diagnosis when such a diagnosis is unsupported by clinical or laboratory findings. Therefore, care must be taken to ensure that the diagnosis is documented as described in 1.04B. Individuals with arachnoiditis, particularly when it involves the lumbosacral spine, are generally unable to sustain any given position or posture for more than a short period of time due to pain."

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00K2a, 1.00K2b (emphasis added).

At Step Three, the ALJ determined that Ash's impairments did not meet or medically equal the requirements of Listing 1.04B as follows:

> Generally, none of the claimant's own medical sources has indicated clinical findings on physical examinations or results of diagnostic laboratory testing that would satisfy the severity requirements of any listed impairment. In reaching the conclusion that the claimant does not have an impairment or combination of impairments that meets or medically equals a listed impairment, I considered all potentially applicable listed impairments but gave particular attention to the following most pertinent listings: 1.04, Disorders of the spine; and 11.08, Spinal cord disorders. Careful consideration was given to each of these listings when reviewing the medical evidence. However, the objective medical signs from physical examinations and the results of diagnostic laboratory testing in the record do not meet their specific criteria of these most directly applicable musculoskeletal and neurological disorders listings, and the evidence does not reasonably support a finding that the claimant's impairments medically equal the criteria of these listings or of any other listed impairment (SSR 17-2p).

> More specifically, Listing 1.04 has not been met at any relevant point since the alleged onset date because the results of March 20, 2018 x-rays and of July 25, 2018 and August 20, 2018 (high contrast) magnetic resonance imaging (MRI) of the claimant's lumbar spine prior to the laminectomy and resection of the intradural mass at L2, which was done in October 2018, did not reveal the required presence of "compromise" of a nerve root (including the cauda equina) or of the spinal cord (Ex. 4F/132,128-130,126-127); and because October 23, 2019 postoperative MRI has also not shown any compromise at the lumbar spine (Ex. 14F/1-2).

> \*\*

> In terms of Listing 1.04B for spinal arachnoiditis, I did consider the potential applicability of this subsection and severity criterion because it was mentioned by the claimant's neurosurgeon in a November 1, 2019 follow-up note and after he had reviewed the postoperative MRI (Ex. 10F/3). Specifically, he noted "a small degree of expected arachnoiditis given his history." However, section 1.00K2b cautions

13

> adjudicators that, seemingly as was done here, arachnoiditis is sometimes used as a diagnoses without support in clinical or laboratory findings and, as such, requires that care be taken to ensure that the diagnosis is confirmed at the time of a surgery by gross description, by microscopic examination of biopsied tissue, or by findings on appropriate medically acceptable imaging. While full consideration was extended to the report of the October 12, 2018 laminectomy and resection of the intradural mass at L2 (Ex. 12F/46-48) and to the pathology biopsy study (Ex. 2F/25-27), these laboratory studies do not show the diagnosis of arachnoiditis and, thus, Listing 1.04B cannot be met.

(Tr. 20-21.)

Ash argues that the ALJ's finding that he does not meet the requirements of Listing 1.04B is "factually incorrect" in light of Dr. Hartzfeld's November 2019 treatment note. The Court disagrees. As set forth above, the ALJ expressly acknowledged Dr. Hartzfeld's November 2019 treatment note, which interprets Ash's October 2019 MRI as showing "a small degree of expected arachnoiditis." (Tr. 504.) The ALJ concluded, however, that Dr. Hartzfeld's treatment note failed to satisfy Listing 1.04B's strict requirement of spinal arachnoiditis diagnosis via operative note, tissue biopsy, or acceptable imaging. Substantial evidence supports this conclusion.

As the ALJ correctly notes, Dr. Hartzfeld's post-operative note from Ash's back surgery (dated October 17, 2018) does not include a diagnosis of spinal arachnoiditis. (Tr. 559.) Rather, that note contains a post-operative diagnosis of "L2-L3 intradural tumor" and does not include any mention or discussion of spinal arachnoiditis. (*Id*.) Ash's post-operative pathology biopsy study (dated October 19, 2018) also fails to include a diagnosis of spinal arachnoiditis, or any mention of that condition. (Tr. 289-292.) Instead, that study contains the following diagnosis: "Intradural Tumor, Excision—Schwannoma." (Tr. 290.) Moreover, Ash has not directed this Court's attention to any medically acceptable imaging from the time of his October 2018 surgery that includes a diagnosis of spinal arachnoiditis. Thus, the ALJ correctly determined that the medical evidence failed

to satisfy the requirement, set forth in Section 1.00K2b, that "[d]iagnosis [of spinal arachnoiditis] must be confirmed **at the time of surgery** by gross description, microscopic examination of biopsied tissue, or by findings on appropriate medically acceptable imaging." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00K2b (emphasis added).

Ash nonetheless argues that Dr. Hartzfeld's November 1, 2019 treatment note satisfies Listing 1.04B because it constitutes a diagnosis based on medically acceptable imaging. As an initial matter, Ash does not address Section 1.022K2b or otherwise articulate any reasoned legal argument why that Section's requirement of diagnosis "at the time of surgery" does not apply herein. Thus, and in the absence of any meaningful argument to the contrary, the Court finds that the ALJ correctly concluded that Dr. Hartzfeld's treatment note (which interprets Ash's October 2019 MRI) is insufficient because it does not satisfy the requirement of diagnosis "at the time of surgery" by appropriate medically acceptable imaging. Even aside from this issue, the Court further notes that, although Dr. Hartzfeld refers generally to "a small degree of expected arachnoiditis," his November 2019 treatment note does not, in fact, include a diagnosis of spinal arachnoiditis. (Tr. 503-504.) To the contrary, the only diagnosis contained in that treatment note is "Schwannoma of the spinal cord – D33.4 (Primary)." (Tr. 503.) Additionally, neither the July 2018 MRI, August 2018 MRI, nor the October 2019 MRI contain any reference to spinal arachnoiditis. (Tr. 259-260, 262, 605-606.)

The Sixth Circuit has interpreted Listing 1.04B as having "strict requirements," noting that it "requires that a spinal arachnoiditis condition be confirmed by an operative note or tissue biopsy." *Lawson v. Comm'r of Soc. Sec.*, 192 Fed. Appx. 521, 529-30 (6th Cir. 2006). District courts in this Circuit have also commented on Listing 1.04B's stringent requirement that claimants provide a "specific diagnosis of spinal arachnoiditis." *See Walden v. Comm'r of Soc. Sec.*, 2021 WL 328260

15

at * 7 (E.D. Tenn. Feb. 1, 2021) ("Listing 1.04B requires a specific diagnosis of spinal arachnoiditis."); *Moran v. Comm'r of Soc. Sec.*, 40 F.Supp.3d 896, 925 (E.D. Mich. 2014) (noting that Listing 1.04B requires "specific medical proof of spinal arachnoiditis"). Here, the Court finds that substantial evidence supports the ALJ's conclusion that Ash failed to come forward with medical evidence satisfying Listing 1.04B's strict requirement of spinal arachnoiditis diagnosis via operative note, tissue biopsy, or acceptable imaging. Ash's first Objection is, therefore, without merit and rejected.

### B. Step Four - Use of a Cane

Ash next argues that the Magistrate Judge erred in finding that substantial evidence supports the ALJ's conclusion, at Step Four, that Ash did not require the use of a cane. (Doc. No. 21 at p. 3.) The Commissioner argues that substantial evidence supports the ALJ's determination that Ash's occasional use of a cane was not medically necessary under Social Security Ruling ("SSR") 96-9p. (Doc. No. 22 at pp. 3-4.)

> Social Security Ruling 96-9p addresses the issue of hand-held assistive devices, as follows:
>
> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185 at *7 (S.S.A. July 2, 1996). The "burden to prove through clinical evidence that a cane is medically required" is on the claimant. *Baker v. Comm'r of Soc. Sec.*, 2020 WL 2213893 at *7 (S.D. Ohio May 7, 2020) (quoting *Strain v. Comm'r of Soc. Sec. Admin.*, 2013

WL 3947160 at *2 (N.D. Ohio Aug. 1, 2013)). "[S]ubjective complaints do not amount to medical documentation" establishing the need for a cane. *Grimes v. Berryhill*, 2018 WL 2305723 at * 5 (E.D. Tenn. April 19, 2018), *report and recommendation adopted*, 2018 WL 2305704 (E.D. Tenn. May 21, 2018). "If a cane is not medically necessary, it cannot be considered a restriction or limitation on the plaintiff's ability to work, *Carreon v. Massanari*, 51 Fed. Appx. 571, 575 (6th Cir. 2002), and the administrative law judge is not required to reduce the claimant's RFC accordingly." *Lowe v. Comm'r of Soc. Sec.*, 2016 WL 3397428 at * 6 (S.D. Ohio June 21, 2016) (citing *Casey v. Sec'y of Health Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Here, the ALJ expressly discussed and considered the medical evidence regarding Ash's use of a cane and determined that Ash had failed to demonstrate that a cane was medically necessary. (Tr. 21-28.) The ALJ acknowledged Ash's hearing testimony and treatment notes indicating that he ambulated with a cane but noted that post operative physical therapy notes reflected improvement in Ash's muscle strength and ability to ambulate independently. (Tr. 21-26.) Of particular note, the ALJ explained:

> The November 2018-April 2019 course of postoperative physical therapy is not proportionate in objective medical findings, in alleged functional limitations, and in moderate pain intensity with the extreme degree of alleged symptoms in connection with this application. The goals attained in balance and full strength of the bilateral lower extremities pair with the observations of ambulating without assistive device and without the back brace at nearly all 2019 therapy sessions to show that the cane is not medically necessary to support walking (or standing or balancing) whether generally or for short and intermittent periods that would total no more than two hours of an eight-hour workday. **At the time therapy ended in April 2019, Mr. Ash stated that he was bringing his cane with him but was not using it when he went on walks, and he only reported difficulty ambulating up and down hills (Ex. 4F/24). This further shows that the cane is not medically necessary to support walking or standing for two hours of a workday.**
>
> **

> I do not find a prescription of the cane from any of his medical sources and, for the reasons stated above from the course of physical therapy and included observations that he was able to ambulate without the cane, otherwise do not find the cane to be medically necessary to support walking (or standing) whether generally or when restricting the claimant to only occasional (two total hours) of walking and standing in an eight-hour workday as in the regulatory range of sedentary work.

(Tr. 26, 28) (emphasis added). The ALJ also found the testimony and evidence regarding Ash's daily activities to be inconsistent with medical necessity for a cane, noting evidence that Ash can bathe and dress himself, wash dishes, do some limited aspects of laundry chores, drive on a limited basis, go on walks, and help run errands for his elderly mother. (Tr. 29-30.) Finally, the ALJ rejected Dr. Mason's opinion that Ash needed to use a cane at all times, finding it to be "highly inconsistent with the 2018-2019 physical therapy records and included signs for improvement to full 5/5 muscle strength in both lower extremities, improvement in range of motion at the lumbar spine, improvement in balance and many visits at which the claimant was observed to be able to ambulate independently and without the use of the cane, and reduced and stable pain level after the surgery and with the course of therapy visits to moderate level." (Tr. 33.)

The Court agrees with the Magistrate Judge that the ALJ's findings are supported by substantial evidence in the record. As detailed *supra,* Ash showed improvement during physical therapy, both in terms of his muscle strength, endurance, and ability to ambulate without a cane. (Tr. 356, 343.) While Ash cites to certain treatment notes in which he is noted as using a cane (Tr. 246, 344, 503), this is insufficient to require the ALJ to incorporate its use into the RFC. As set forth above, for a cane to be considered "medically required," SSR 96-9p requires that there be medical documentation that establishes that the cane is medically necessary and "describe[es] the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185

at *7.  "[I]ndications in the medical records that Plaintiff was using a cane [are] insufficient to establish that the cane was medically required." *Parrish v. Berryhill*, 2017 WL 2728394 at *12 (N.D. Ohio June 8, 2017), *report and recommendation adopted*, 2017 WL 2720332 (N.D. Ohio June 23, 2017)).  *See also Stupka v. Saul*, 2021 WL 508298 at * 3 (N.D. Ohio Feb. 11, 2021)).  Moreover, a "plaintiff's belief in the need for an assistive device does not constitute medical evidence that the cane was necessary." *Stupka*, 2021 WL 508298 at fn 3.  *See also Mitchell v. Comm'r of Soc. Sec.,* 2014 WL 3738270 at *12 (N.D. Ohio July 29, 2014) (finding plaintiff's testimony did not qualify as "medical documentation establishing the need" for a cane under SSR 96-9p).

Here, while some of Ash's treatment notes sometimes noted use of a cane, there is no evidence that Dr. Dorfman or Dr. Hartzfeld ever prescribed Ash a cane or otherwise stated that Ash required a cane to stand or walk.  While a prescription is not necessary to establish the requisite medical need under SSR 96-9p, "[t]he lack of a prescription [ ] is an appropriate factor to consider as to whether substantial evidence supports the ALJ's decision that a cane was not medically necessary." *Krieger v. Comm'r of Soc. Sec.*, 2019 WL 1146356 at *5 (S.D. Ohio March 13, 2019) (quoting *Swearengin v. Berryhill*, 2018 WL 5045216 at *4 n.4 (E.D. Tenn. Oct. 17, 2018)).  *See also Stupka*, 2021 WL 508298 at fn 4.

In his Objection, Ash does cite, summarily, to Dr. Mason's June 2020 opinion that he needs to use a cane at all times for both standing and walking.[6]  (Tr. 512.)  The ALJ, however, explicitly rejected Dr. Mason's opinion regarding Ash's need for cane as being "highly inconsistent with" the other evidence of record, including Ash's postoperative physical therapy notes and self-reported

---

[6] The Court notes that, although Dr. Mason treated Ash for some time, Ash has not directed the Court's attention to any evidence that Dr. Mason ever prescribed him a cane.

19

activities of daily living. (Tr. 33.) In a lengthy and detailed analysis, the Magistrate Judge concluded that the ALJ's rejection of Dr. Mason's opinion is supported by substantial evidence. (Doc. No. 20 at pp. 32-36.) Ash does not raise any specific objection to the Magistrate Judge's finding on this issue or otherwise argue that the ALJ failed to properly evaluate Dr. Mason's opinion. (Doc. No. 21.) Thus, Ash has waived this issue.[7]

Accordingly, and for all the reasons set forth above, Ash's second Objection is without merit and overruled.

V.      Conclusion

For all of the foregoing reasons, Plaintiff's Objection (Doc. No. 21) is OVERRULED. The Court ACCEPTS the Magistrate Judge's Report and Recommendation (Doc. No. 20) and the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

                                                                       s/Pamela A. Barker
                                                                    PAMELA A. BARKER
Date: February 22, 2023                                             U. S. DISTRICT JUDGE

---

[7] The Court has reviewed the Magistrate Judge's discussion regarding the ALJ's rejection of Dr. Mason's opinion and finds no clear error. Moreover, even if the Court had conducted a *de novo* review of this particular issue, the Court would find that the ALJ properly rejected Dr. Mason's opinion, for the reasons set forth in the R&R.

20